IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| LG ELECTRONICS, INC., | OPINION AND ORDER |
| Plaintiff, | |
| | 07-cv-361-bbc |
| v. | |
| QUANTA COMPUTER INC., and QUANTA COMPUTER USA, INC., | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Several motions are before the court in this case for infringement of four patents owned by plaintiff LG Electronics, Inc. relating to playing and recording different kinds of media: (1) plaintiff's motion for leave to supplement its complaint under Fed. R. Civ. P. 15(d); (2) defendants Quanta Computer Inc.'s and Quanta Computer USA, Inc.'s motion to exclude a supplemental export report and certain discovery materials as untimely; (3) defendants' motion for summary judgment; (4) plaintiff's motion for partial summary judgment; and (5) plaintiff's motion to amend one of its declarations.

In plaintiff's motion for leave to supplement its complaint, it seeks to add claims for acts of infringement of U.S. Patent No. RE37,052 that occurred after the patent office

1

corrected claims 96 and 102 in that patent. This motion will be denied, for reasons of both undue delay and unfair prejudice. Sides v. City of Champaign, 496 F.3d 820, 825-826 (7th Cir. 2007) (court may deny motion for leave to amend if amendment would cause undue delay and unfair prejudice).

Plaintiff says that it sought to supplement its complaint as soon as it could, but it would be charitable to call such a representation disingenuous. First, plaintiff knew when it filed this lawsuit that claims 96 and 102 contained errors that made them unenforceable without a correction. It also knew that any certificate of correction it received from the patent office would not be effective for the purpose of enforcement unless it filed a new lawsuit or amended its complaint. Southwest Software, Inc. v. Harlequin Inc., 226 F.3d 1280, 1294 (Fed. Cir. 2000) ("The certificate of correction is only effective for *causes of action* arising after it was issued.") (emphasis added). Despite this knowledge, plaintiff pressed ahead with its claims for infringement of claims 96 and 102 without waiting to receive an answer from the patent office before filing suit. Instead, it attempted to obtain a judicial correction from this court (which would have applied retroactively), but it should have known its attempt was meritless in light of the nearly impossible standard for judicial correction of a patent. E.g., Novo Industries, L.P. v. Micro Molds Corp., 350 F.3d 1348, 1357 (Fed. Cir. 2003) (refusing to correct "a" to "and" because other possibilities for correction existed). Further, plaintiff received the correction from the patent office on

2

January 15, 2008, but did not file its motion for leave to supplement until April 22, 2008, only three days before the deadline for filing dispositive motions.

Even if I overlooked the untimeliness of plaintiff's motion, plaintiff's own brief demonstrates the unfair prejudice that granting its motion would cause. Plaintiff concedes that the parties would have to file new expert reports and new claims construction briefs (plaintiff suggests "a short hearing" as well). Dkt. #159, at 13. Even more important, because plaintiff held its motion until the summary judgment deadline was about to pass, allowing plaintiff to amend its complaint would deprive defendants of the opportunity to seek summary judgment with respect to the new claims. Plaintiff's tardiness and questionable litigation strategy should not be rewarded with such a windfall. Its motion for leave to supplement its complaint will be denied.

Plaintiff's motion for partial summary judgment will be denied and defendants' motion for summary judgment will be granted for the reasons set forth below. I will deny as unnecessary plaintiff's motion to amend one of its declarations and defendants' motion to exclude as untimely certain evidence submitted by plaintiff . The evidence has no bearing on the resolution of the parties' motions for summary judgment.

## I.  U.S PATENT NO. RE38,868

**Invention:** Digital recording for variable speeds

**Asserted Claims:** 23, 27, 28, 31, 33, 39, 42, 46 and 48

At the claims construction hearing, the primary dispute with respect to this patent was whether the invention was limited to media using magnetic tape. I concluded in the March 4, 2008 claims construction order that it was, in large part because the specification described "the present invention" as being so limited.

The accused devices do not use magnetic tape; they play and record optical discs such as DVDs. In light of that fact and this court's claim construction, one might have expected that plaintiff would have withdrawn its claims with respect to the '868 patent. That didn't happen. Although plaintiff concedes that it cannot prevail under a theory of literal infringement, it now advances a theory of infringement under the doctrine of equivalents. One might have expected defendants to respond by arguing that the differences between video cassette tapes and DVDs are too substantial to be considered equivalent for the purpose of infringement. That didn't happen either. Instead, they have made more obscure arguments regarding prosecution history estoppel under <u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.</u>, 535 U.S. 722 (2002), and the application of the doctrine of equivalents in means-plus-function claims. Neither of these arguments is persuasive; in fact, they are barely comprehensible. (To be fair, plaintiff's responses to these arguments are no clearer.) Thus, I cannot conclude that defendants are entitled to summary judgment on the ground of noninfringement.

Moving on to the question of validity, defendants argue that the '868 patent is currently unenforceable because the inventors did not comply with the signing requirements for reissuing patents under 37 C.F.R. §§ 1.175 and 1.63. They cite cases in which the court of appeals held that "a reissue patent [is] invalid [if it does] not satisfy the requirements of Rule 175 [37 C.F.R. § 1.175]." Dethmers Manufacturing Co., Inc. v. Automatic Equipment Manufacturing Co., 272 F.3d 1365, 1376 (Fed. Cir. 2001) (citing Nupla Corp. v. IXL Manufacturing Co., 114 F.3d 191, 195 (Fed. Cir.1997). See also Medrad, Inc. v. Tyco Healthcare Group LP, 466 F.3d 1047, 1052 (Fed. Cir. 2006) ("A failure to submit a supplemental declaration, if required [by § 1.175], renders a patent invalid.")

Plaintiff concedes that the patent currently does not comply with the requirements of the federal regulations because several inventors did not include with the application their signed declarations. Plt.'s Resp. to Dfts.' PFOF, ¶¶117, 119-121, 123-24, 126, dkt. ##205. However, plaintiff relies on Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co., 228 F.3d 1338, 1344 (Fed. Cir. 2000), and Seiko Epson Corp. v. Nu-Kote Intern., Inc., 190 F.3d 1360, 1367-68 (Fed. Cir. 1999), for the proposition that a failure to comply with "procedural" or "technical" requirements can render a patent unenforceable only if a party can show fraud or inequitable conduct by the inventors.

I agree with defendants that Ajinomoto and Seiko addressed the question whether procedural failings could render a patent *permanently* unenforceable. That is the only way to

5

read Ajinomoto and Seiko consistently with Dethmers and Nupla, which are not limited to "substantive" errors as plaintiff suggests. In both Ajinomoto and Seiko, the defects had been corrected and the only question was whether the correction was sufficient. In that situation, the court held that the defect could be corrected so long as the inventors did not have deceptive intent. Ajinomoto, 228 F.3d at 1344 ("The law does not bar *the correction of defects* when the defect was not the product of fraud. The district court did not err in requiring proof of fraud or inequitable conduct in order to preclude corrective action.") (emphasis added).

In this case, plaintiff does not suggest that it has corrected the defect or that this court has the authority to do so. Accordingly, I must conclude that the '868 patent is unenforceable for the purpose of this case.

## II. U.S. PATENT NO. RE37,052

**Invention:** a method of copy protection

**Asserted Claims:** 63, 65, 70, 96, 98 and 102

Like the '868 patent, the '052 patent was reissued from a patent that was limited expressly to media that use magnetic tape. However, unlike the reissued '868 patent, the specification of the reissued '052 patent deleted the magnetic tape limitations. For this reason, I concluded in the order construing the claims that the '868 patent was still limited

6

to magnetic devices but that the '052 patent is not so limited. March 4, 2008 Opinion and Order, dkt. #97, at 10-20.

Defendants now say that as a result of the deletions, plaintiff violated 35 U.S.C. § 251, which prohibits the introduction of "new matter" into the reissued patent. The parties agree that deleting material from a patent may qualify as adding new matter if doing so broadens the scope of the patent so that the patent owner is claiming more than it had a right to claim in the original patent, e.g., Baldwin Graphic Systems, Inc. v. Siebert, Inc., 512 F.3d 1338, 1344 (Fed. Cir. 2008), but, not surprisingly, they disagree whether § 251 was violated by changing the invention so that it applies to any media rather than only those using magnetic tape.

I agree with defendants that the issue is controlled by my conclusion in the March 4 order that because the specification referred consistently to "the present invention" as limited to devices using magnetic tape, the '868 patent applied only to magnetic tape media. In reaching this conclusion, I relied on cases such as Verizon Services Corp. v. Vonage Holdings Corp., 503 F.3d 1295, 1308 (Fed. Cir. 2007), which held: "When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention." The patent from which the '052 patent was reissued also describes "the present invention" as being limited to devices using magnetic tape:

- The present invention relates to a copy prevention method and apparatus of a

digital magnetic recording/reproducing system, and more particularly to a copy prevention method and apparatus of a digital magnetic recording/reproducing system. U.S. Patent No. 5,689,559, col. 1, lns. 8-11

• [I]t is an object of the present invention to provide a copy prevention method and apparatus of a digital magnetic recording/reproducing system applicable to a digital VCR. '559 patent, col. 2, lns. 68-61.

• To achieve the above object of the present invention, there is provided a copy prevention method of a digital magnetic recording/reproducing system. '559 patent, col.2, lns. 64-66.

Because magnetic tape was an express limitation of the original patent, plaintiff was not free to delete that limitation during the reissue process. Hester Industries, Inc. v. Stein, Inc. 142 F.3d 1472, 1480 (Fed. Cir. 1998) ("A reissue claim that does not include a limitation present in the original patent claims is broader in that respect.") Plaintiff appears to realize that the March 4 order forecloses its argument on this issue; it does not even attempt to reconcile its position with that order.

Accordingly, I conclude that defendants have shown by clear and convincing evidence that the '052 patent is invalid. This conclusion makes it unnecessary to consider plaintiff's argument in its motion for summary judgment that defendants have infringed claim 63 of the '052 patent as a matter of law.

### III. U.S. PATENT NOS. 6,782,488 and 7,088,655

**Invention of '488 patent:** Manages defects on disc during writing, using multiple

methods

**Asserted Claims:** 4-10, 14, 23-24

**Invention of '655 patent:**   Using write strategies to optimize writing to optical discs

**Asserted Claims:** 5-6, 9-10 and 12-16

Plaintiff's argument regarding infringement of the '488 patent starts out on the wrong foot when plaintiff states in the first two sentences, "Defendants do not argue anywhere in their motion that defendants' accused notebook computer products do not infringe the '488 patent. Defendants cannot make such an argument, because they admit that they have never investigated the DVD drives and software incorporated into their own products to determine how they work, much less whether they infringe." Plt's Br., dkt. #203, at 42. This view rests on a fundamental misconception regarding the allocation of burdens on a motion for summary judgment. The Supreme Court made it clear in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), that it is not a defendant's burden to disprove the plaintiff's claim on a summary judgment motion; it is plaintiff's burden to prove it. Thus, defendants have no obligation to show that any of their products do not infringe; they need only point out that the evidence adduced by plaintiff fails to show that they do.

I agree with defendants that plaintiff cannot defeat their motion for summary judgment because it has not proposed any facts identifying even one product of defendants that infringes the '488 patent. For example, it says in conclusory fashion that "[a]t least one

9

accused Quanta notebook computer compliant with DVD-RAM v2.0 or higher infringes [the] '488 patent." Plt.'s PFOF, ¶28, dkt. #177.  Plaintiff fails to propose facts regarding *which* accused product infringes or *how* it infringes.  Apparently, defendants and this court are supposed to take plaintiff's word for it, but that is now how summary judgment works.

Rule 56 required plaintiff to set forth "specific facts" in opposing defendants' motion for summary judgment.  Plaintiff's repeated statements in their proposed findings of fact that "at least one" accused product infringes does not satisfy that standard.  Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); Drake v. Minnesota Mining & Manufacturing Co., 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.")

Astoundingly, plaintiff says in its brief that "[w]hich computers" infringe is a "matte[r] for proof at trial, not [an] issu[e] that must be resolved on summary judgment."  Dkt. #203, at 44.  Plaintiff is wrong.  Any trial issue is a summary judgment issue if one of the parties puts in play.  This is because the standard for summary judgment mirrors the standard for judgment as a matter of law, a point established by the Supreme Court more than 20 years ago.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Thus, plaintiff

10

had the duty to set forth those facts it needed to prevail at trial. Obviously, plaintiff could not prevail at trial without identifying the accused products and explaining how they infringe. If there is more specific evidence lurking somewhere in the record, it is not the court's obligation to find it; plaintiff was required to include all the facts it needed in its proposed findings of fact. Procedure to Be Followed on Motions for Summary Judgment,I.B.3 ("The statement of proposed findings of fact shall include ALL factual propositions the moving party considers necessary for judgment in the party's favor."); Chelios v. Heavener, 520 F.3d 678, 687 (7th Cir. 2008) (upholding district court's decision "to require strict compliance with its local rules" regarding fact finding)

Plaintiff's proposed findings of fact regarding infringement of the '655 patent have the same deficiency: they do not identify any accused products that infringe the patent. Accordingly, I must grant defendants' motion for summary judgment with respect to the '655 and '488 patents and deny plaintiff's motion for partial summary judgment with respect to the '488 patent.

This leave the question of validity of '488 and '655 patents. Neither side suggests that there is any likelihood that defendant will later sue plaintiff for infringement of any of the asserted claims or, in the language of the Supreme Court, that there is '"a substantial

11

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" MedImmune Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (2007) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

 As I noted in Silicon Graphics, Inc. v. ATI Technologies, Inc., 06-cv-611-bbc (W.D. Wis. Mar. 25, 2008), there is ample room for argument on the question whether a district court retains jurisdiction to decide claims for invalidity once all of the claims for infringement are dismissed. Compare Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1348 (Fed. Cir. 2005) (holding that district court erred in determining that jury verdict of non-infringement divested district court of jurisdiction to hear unenforceability counterclaim) with Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1347 (Fed. Cir. 2007) (holding that district court correctly determined that it had been divested of jurisdiction to hear defendant's counterclaims for invalidity and unenforceability when plaintiff had voluntarily dismissed its infringement claims without prejudice before trial). However, I concluded in Silicon Graphics that even if a court retains jurisdiction to decide issues of validity that are not tied to an actual controversy, it has discretion to dismiss those claims *before* trial, which is one way to reconcile the approaches of Fort James and Benitec. See also Cardinal Chemical Co. v. Morton International, Inc., 508 U.S. 83, 95 (1993) (in addressing motion for declaratory judgment district court has discretion in determining

12

whether to exercise jurisdiction even when established). Further, in this case noninfringement is much clearer than invalidity, a factor the court of appeals has held is important in determining whether discretionary dismissal is appropriate. Phonometrics, Inc. v. Northern Telecom Inc., 133 F.3d 1459, 1468 (Fed. Cir. 1998). Accordingly, defendants' claims relating to invalidity of the '488 and '655 patents will be dismissed without prejudice.

## ORDER

IT IS ORDERED that

1. Plaintiff LG Electronics, Inc.'s motion for leave to supplement its complaint, dkt. #158, is DENIED.

2. Plaintiff's motion for leave to supplement its proposed findings of fact, dkt. #250, is GRANTED as unopposed.

3. The motion filed by defendants Quanta Computer Inc. and Quanta Computer USA, Inc. to exclude untimely evidence submitted by plaintiff. dkt. #241, is DENIED as unnecessary.

4. Plaintiff's motion to amend the second declaration of Dae Sul Shim, dkt. #302, is DENIED as unnecessary.

5. Plaintiff's motion for partial summary judgment, dkt. # 160, is DENIED.

6. Defendants' motion for summary judgment, dkt. #163, is GRANTED on the grounds that U.S. Patent No. RE38,868 is unenforceable in the context of this case, U.S. Patent No. RE37,052 is invalid under 35 U.S.C. § 251 and plaintiff has failed to raise a genuine issue of material fact that would permit a reasonable jury to find that defendants infringed U.S. Patent Nos. 6,782,488 and 7,088,655.

7. Defendants' counterclaims for invalidity of the '488 and '655 patents are DISMISSED without prejudice.

8. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 15th day of July, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge